FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ NOV 1 3 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

TUTOR TIME LEARNING CENTERS, LLC,

                        Plaintiff,

       -against-


KOG INDUSTRIES, INC., GABRIEL
COLMENARES, and GABECO INDUSTRIES,
INC.

                     Defendants.

--------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**1:12-CV-4129 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

     Before the court is a motion for a preliminary injunction filed by Plaintiff Tutor Time

Learning Centers, LLC ("Tutor Time") seeking to enforce certain non-compete provisions

against Defendants Gabriel Colmenares and his two corporations, KOG Industries, Inc. ("KOG")

and GabeCo Industries, Inc. ("GabeCo"). For the following reasons, Tutor Time's motion is

DENIED.

## I.   BACKGROUND

###     A.    Factual Background

     Tutor Time is a franchisor of childcare and education services. (Young Decl. (Dkt. 19)

¶ 3.) As part of this business, Tutor Time has developed a range of trademarks and other

intellectual property over the last two decades. (Pl. Prelim. Inj. Mem. (Dkt. 20) at 2-3.)

     In June 2000, Tutor Time entered into a franchise agreement ("Queens Franchise

Agreement") with KOG governing the operation of a Tutor Time center at 6158 Springfield

Boulevard, Bayside, Queens ("Queens Location"). (Young Decl. ¶¶ 6-7.) Under this

Agreement, KOG and any "shareholder or partner" was not permitted to operate a childcare business within ten miles of any Tutor Time center for two years after termination of the Agreement ("Non-Compete"). (Queens Franchise Agreement (Ex. A to Compl. (Dkt. 1)) § 9.8.)

Separately, in June 2010, GabeCo assumed control of a Tutor Time center located at 1779 Richmond Avenue, Staten Island ("Staten Island Location"). (Colmenares Decl. (Dkt. 22) ¶ 2.) The parties agree that GabeCo operated this center without any written agreement, but disagree as to why. Defendants claim that Tutor Time consented to this arrangement, pointing out that Tutor Time guaranteed GabeCo's lease of the property (id. at Ex. G), awarded the Staten Island Location with a "School of Excellence Award" for the 2010-11 year (id. at Ex. H; Young Supp. Decl. (Dkt. 25) ¶ 9), and listed the Staten Island Location on its website (Colmenares Decl. ¶ 13; Compl. at 34). Tutor Time asserts that GabeCo and Colmenares "are not, and never have been, authorized to operate" the Staten Island Location as a Tutor Time center (Pl. Prelim. Inj. Mem. at 3), but that Colmenares "used his longstanding and ongoing relationship with Tutor Time . . . [to] brush aside and disregard ongoing requests and numerous demands that he immediately execute" the applicable agreements for the Staten Island Location (Pl. Reply Mem. (Dkt. 27) at 3; see also Young Supp. Decl. ¶¶ 10-11). Tutor Time claims that over the course of 2010 and 2011, Colmenares did not comply with its requests to execute the necessary paperwork (Young Supp. Decl. ¶ 11), but that its need to "protect the Tutor Time marks and good will led to the support . . . provided to the Staten Island Center" (id. ¶ 9).

In July 2012, Tutor Time terminated the Queens Franchise Agreement because of KOG's alleged failure to pay certain royalty fees. (Colmenares Decl. ¶ 2.) Colmenares states that after he received notice of this termination, he took the necessary steps to "de-identify" the Queens Location: Colmenares changed the location's name to "Ivy League Early Learning Academy,"

2

removed signs and other forms bearing Tutor Time's trademarks, and ceased use of "any other purported proprietary information." (Id.) When this suit was filed in August 2012, Defendants began to de-identify the Staten Island Location, and also changed its name to "Ivy League Learning Academy."[1] (Id. ¶ 5.)

As of the filing of this motion, the state of Defendants' de-identification of both locations was in dispute. Defendants claimed that both locations had stopped using all of Tutor Time's intellectual property. (Colmenares Decl. ¶¶ 2, 5, 8; Colmenares Supp. Decl. (Dkt. 24) ¶ 3.) But Tutor Time's investigator asserted that, based on his inspection of both locations, Defendants were still in fact using Tutor Time's proprietary information. (White Decl. (Dkt. 26) ¶¶ 5-10, 14.) Regardless, it is undisputed that Defendants are currently operating childcare centers at the Queens and Staten Island Locations under the "Ivy League Learning Academy" name. (See Colmenares Decl. ¶ 5; Oct. 17, 2012, Oral Arg. Tr. at 49:13-23.)

**B.      Procedural History**

Tutor Time filed this suit on August 17, 2012. (Compl.) On October 10, 2012, Tutor Time filed the instant motion. (See Pl. Prelim. Inj. Mot. (Dkt. 18).) As drafted, Tutor Time sought a preliminary injunction to (1) enjoin Defendants' alleged continued use of Tutor Time's trademarks and other intellectual property; and (2) terminate Defendants' continued operation of the Queens and Staten Island Locations as violations of the Non-Compete. (Id.)

On October 17, 2012, the court heard oral argument on this motion. (Oct. 17, 2012, Minute Entry.) At this hearing, the parties entered into a partial settlement agreement that resolved Tutor Time's motion insofar as it sought a preliminary injunction enjoining Defendants'

---

[1]      Tutor Time claims that its counsel sent GabeCo and Colmenares a letter demanding that they cease operation of the Staten Island Location in March 2012. (Cease & Desist Ltr. (Ex. C to Compl.).) Defendants claim they never received this letter. (Colmenares Decl. ¶ 10.)

continued use of Tutor Time's marks and intellectual property ("Stipulation"). (Id.) The parties

agreed, and the court so-ordered, that: (1) Defendants will cease use of a proprietary computer

system, Safe 'N Sound, and will allow remote inspection by Tutor Time to confirm this

agreement; (2) Defendants will not "use or display any Tutor Time marks, curriculum,

educational materials, or copies of Tutor Time forms"; (3) Defendants will send a letter

informing all existing customers that the Queens and Staten Island Locations are "not . . .

licensed Tutor Time Learning Care Center[s and] that [they] will not be using any Tutor Time

curricul[a] or educational materials or software"; and (4) Defendants will disconnect all phone

numbers formerly associated with Tutor Time.[2]  (Oct. 17, 2012, Oral Arg. Tr. at 45:8-51:19.)

The court reserved decision as to the Non-Compete.[3]  (Id. at 51:20.)

## II.    DISCUSSION

### A.    Choice of Law

The parties do not specifically address what law applies to Tutor Time's motion insofar

as it seeks to enforce the Non-Compete.  They do note that the Queens Franchise Agreement is

governed by Michigan law to the extent federal law does not apply.  (See Queens Franchise

Agreement § 12.4.)  However, the parties cite both Second and Sixth Circuit jurisprudence.  (See

Pl. Prelim. Inj. Mem. at 12 & n.3; Def. Opp'n Mem. (Dkt. 23) at 14; Pl. Reply Mem. at 9.)

Regardless, "[t]he question [of] whether a preliminary injunction should be granted is

---

[2]      Since that hearing, Defendants submitted a letter documenting their compliance with the Stipulation, which states that (1) the Safe 'N Sound program is no longer in use; (2) Defendants will allow Tutor Time to remotely inspect their systems to ensure that this is the case; (3) Defendants are no longer using any Tutor Time marks, curricula, materials, or forms; (4) Defendants have disconnected all phone numbers formerly associated with Tutor Time; and (5) Defendants have provided Tutor Time's counsel with a draft of the letter to be sent to existing clients. (Oct. 26, 2012, Ltr. (Dkt. 32).)  Tutor Time has not challenged any of these claims.

[3]      Defendants also moved to consolidate another case, Tutor Time v. Danick Indus., Inc., No. 12-CV-4569 (LDW) (E.D.N.Y. Sept. 12, 2012), with this suit. (Oct. 12, 2012 Ltr. (Dkt. 28).)  At oral argument, Tutor Time's counsel agreed to this consolidation, which has since occurred. (See Oct. 17, 2012, Minute Entry.)  However, Tutor Time has moved for a preliminary injunction only in this action, and this Memorandum & Order accordingly only applies to the continued operation of the Queens and Staten Island Locations.

generally one of federal law . . . though state law issues are sometimes relevant to the decision to

grant or deny." Baker's Aid v. Hussmann Foodservice Co., 830 F.2d 13, 15 (2d Cir. 1987); see

also Seda Specialty Packing Corp. v. Am. Safety Closure Corp., No. 95-CV-4745 (LMM), 1995

WL 404821, at *2 (S.D.N.Y. July 7, 1995) (holding that "[u]nder the federal standard," the

plaintiff's injury did not "suffice to demonstrate imminent irreparable harm"). The court

accordingly applies Second Circuit precedent as binding, and looks to other circuits for

persuasive authority.

### B.    Preliminary Injunction

"To obtain a preliminary injunction, the moving party must demonstrate '(1) irreparable

harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious

question going to the merits to make them a fair ground for trial, with a balance of hardships

tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of

granting an injunction.'" Red Earth LLC v. United States, 657 F.3d 138, 143 (2d Cir. 2011)

(citation omitted); see also Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC, 468 F.

App'x 43, 43 (2d Cir. Mar. 19, 2012). This court has "wide discretion in determining whether to

grant a preliminary injunction," which is "one of the most drastic tools in the arsenal of judicial

remedies." Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)

(citations omitted). Because Tutor Time fails to establish both the irreparable harm and public

interest elements, the court does not address the other requirements.

### 1.    Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance

of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118

(2d Cir. 2009) (citation omitted). "[A] plaintiff must demonstrate that absent a preliminary

injunction he will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be redressed through a monetary award.'" Payment Alliance Int'l, Inc. v. Ferreira, 530 F. Supp. 2d 477, 480 (S.D.N.Y. 2007) (quoting Grand River, 481 F.3d at 66)).

"Generally, when a party violates a [reasonable] non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm.'" Singas, 468 F. App'x at 43 (citation omitted) (alteration in original). But the Second Circuit "has rejected the proposition 'that irreparable harm must inevitably be assumed in breach of covenant cases.'" Id. (citation omitted). Issuance of a preliminary injunction therefore "depends on the factual particulars in each case." Id. (citation omitted).

Tutor Time contends that the Non-Compete must be enforced at this stage because its "name and curriculum, methods, forms, manuals[,] computer programs and other materials used to operate a Tutor Time® franchise are valuable and protectable interests," and because "[c]ustomers are attracted to the Tutor Time® name and the services under the Tutor Time® name." (Pl. Reply Mem. at 9.) It adds that Tutor Time will suffer an "actual loss of customers and . . . damage to the Tutor Time® Marks and franchise system." (Pl. Prelim. Inj. Mem. at 13.) Tutor Time also asserts that the Non-Compete is "critical to protect the investments of current franchisees, all of whom have the option to sell their franchises to other buyers." (Young Supp. Decl. ¶ 24.) In other words, Tutor Time believes that continued operation of the Ivy League centers at the Queens and Staten Island Locations produces three separate, yet related, types of irreparable harm: (1) public confusion; (2) loss of good will; and (3) injury to current franchisees. These arguments do not pass muster.

6

### a.    Public Confusion

Tutor Time argues that "irreparable harm is established where, as here, a likelihood of confusion exists because defendants' [sic] are misappropriating another's Marks." (Pl. Reply Mem. at 9; see also Young Decl. ¶ 30.)  But the Stipulation, which this court so-ordered, alleviates any such concern.  Defendants agreed not to "use or display any Tutor Time marks, curriculum, educational materials, or copies of Tutor Time forms"; to send a letter to all existing customers to inform them that the Queens and Staten Island Locations are "not . . . licensed Tutor Time Learning Care Center[s], [and] that [they] will not be using any Tutor Time curricul[a] or educational materials or software"; and to disconnect all phone numbers formerly associated with Tutor Time.  (Oct. 17, 2012, Oral Arg. Tr. at 45:8-51:19.)  There is no need for a preliminary injunction to prevent public confusion given this agreement, which is backed by the power of the court.  Cf. Singas, 468 F. App'x at 43 (noting that non-compete provisions in franchise agreements protect against "continued operation[s] under a different name [that] may confuse customers").

### b.    Good Will

Tutor Time also contends that Defendants' continued operation of the Ivy League centers irreparably damages its good will, necessitating a preliminary injunction.  (See Pl. Prelim. Inj. Mem. at 12; Pl. Reply Mem. at 9; Young Decl. ¶¶ 18-19, 27-28, 30.)

"Good will is not readily defined, but it has been described as the 'expectation that the old customers will resort to the old place.'"  Nat'l Elevator Cab & Door Corp. v. H & B, Inc., No. 07-CV-1562 (ERK) (RML), 2008 WL 207843, at *5 (E.D.N.Y. Jan. 24, 2008) (quoting United States v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896, 901 (2d Cir. 1992)).  "[T]he shorthand description of good-will as 'the expectancy of continued patronage,' provides a

useful label with which to identify the total of all the imponderable qualities that attract customers to [a] business." Newark Morning Ledger Co. v. United States, 507 U.S. 546, 555-56 (1993) (citation omitted).

Here, Tutor Time has not met its burden to demonstrate that its good will is being irreparably harmed. When Tutor Time terminated the Queens Franchise Agreement, it ended its relationship with the customers of the Queens Location. At that point, these patrons were, for the foreseeable future, lost to Tutor Time. Cf. Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 550 (6th Cir. 2007) ("The likely interference with customer relationships *resulting from the breach* of a non-compete agreement is the kind of injury for which monetary damages are difficult to calculate." (emphasis added)); Basicomputer Corp. v. Scott, 973 F.2d 507, 512 (6th Cir. 1992) (finding irreparable harm where former employees solicited the plaintiff's *current* customers). As Tutor Time admits, it cannot currently open a new child care franchise in New York. See N.Y. Gen. Bus. Law § 683 (requiring advance registration for sales of franchises). (Young Supp. Decl. ¶ 24 (admitting that Tutor Time is not so registered).) That Tutor Time claims it "may" seek to begin the registration process is insufficient to establish irreparable harm. See Life Techs. Corp. v. AB Sciex Pte. Ltd., No. 11-CV-325 (RJH), 2011 WL 1419612, at *5 (S.D.N.Y. Apr. 11, 2011) (finding the plaintiff's harm "speculative" because it "d[id] not even state a current intention to reenter the market [against the defendant], only a possibility that it may do so"); cf. Carvel Corp. v. Eisenberg, 692 F. Supp. 182, 186 (S.D.N.Y. 1988) (upholding a restrictive covenant because it protected the franchisor's "interest in protecting its know-how and . . . its ability to install another franchise in the same territory").

Thus, Tutor Time's only interest in the former Queens Location customers relates to their

potential subsequent enrollment at an existing Tutor Time location. But there are only two Tutor

Time locations within ten miles of the Queens Location, and they are in different

neighborhoods.[4] Cf. Singas, 468 F. App'x at 43 (finding irreparable harm where there were nine

shops, including the flagship franchise, within ten miles of the former franchisee). There is no

evidence that if Defendants had immediately complied with the Non-Compete, the former

Queens Location customers would have taken their business to one of these other two Tutor

Time locations rather than a different company's center in the more immediate area.[5] Tutor

Time also has not suggested that it attempted to recruit these customers to the other Tutor Time

locations once it terminated the Queens Franchise Agreement, nor that it would have done so had

the Defendants immediately ceased operations of the Ivy League Early Learning Academies.

The only other assertions by Tutor Time related to harm to goodwill are conclusory

statements that Defendants have "misappropriate[d] the customers of other Tutor Time®

franchises thereby engag[ing] in unfair competition," and that the Queens Location now is "in

direct competition with" Tutor Time's College Point and New Hyde Park locations. (Young

Decl. ¶ 32.) This evidence is insufficient to warrant the extraordinary remedy of a preliminary

---

[4]    The court takes judicial notice that the two Tutor Time locations nearest to the Queens Location are a
substantial distance away. See Fed. R. Evid. 201(b) (permitting courts to take judicial notice of facts "capable of
accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). The Tutor
Time center located at 1619 Jericho Turnpike, New Hyde Park, is at least 6.1 miles away from the Queens Location,
or approximately forty-six minutes by public transit. See GoogleMaps, http://maps.google.com (last visited Nov.
13, 2012). The Tutor Time location at 25-56 Ulmer Street, College Point, is at least 5.1 miles away, or
approximately forty-five minutes by public transit. Id. (See Young Decl. ¶ 32 (identifying these locations).) Cf.
Rindfleisch v. Gentiva Health Sys., Inc., 752 F. Supp. 2d 246, 259 n.13 (E.D.N.Y. 2010) (calculating distances and
transportation times using GoogleMaps).

[5]    Tutor Time has proffered that "parents of the Staten Island location have investigated sending their children
to another Tutor Time ® location . . . within ten (10) miles of the Queens Location that is not affiliated with
defendants[], because of their dissatisfaction with defendants' Staten Island Location." (Oct. 26, 2012, Young Supp.
Decl. (Dkt. 38) ¶ 9.) However, this evidence was improperly placed before the court because it was submitted only
in response to the court's directive to submit an affidavit to support Tutor Time's counsel's representation at oral
argument that "there is not a single person operating without a written agreement and all have post-term
noncompetes." (Oct. 17, 2012, Oral Arg. Tr. at 50:19-51:2.) The court did not grant leave to submit any additional
evidence it desired. Nevertheless, this isolated, second-hand, and vague statement is insufficient to warrant a
preliminary injunction.

injunction.  See Clonus Assocs. v. Dreamworks, LLC, 417 F. Supp. 2d 248, 254 & n.45

(S.D.N.Y. 2005) (rejecting claims of irreparable harm "unsupported by concrete evidence" and

collecting cases in the Second Circuit that have "rejected such speculative arguments in deciding

whether to issue a preliminary injunction").  Without proof of an "expectancy of continued

patronage," Newark Morning, 507 U.S. at 555-56, Tutor Time's motion based on harm to its

good will fails.

<b>c.      Protection of Existing Franchisees</b>

Tutor Time also claims that its current franchisees are irreparably harmed by Defendants'

operations.  But as described above, there is no evidence that the customers of the Queens

Location would have enrolled at an existing franchise or that Tutor Time sought to continue its

relationship with these customers after it terminated the Queens Franchise Agreement.

Tutor Time also argues that enforcement of the Non-Compete is "critical to protect the

investments of current franchisees, all of whom have the option to sell their franchises to other

buyers." (Young Supp. Decl. ¶ 24.)  It is true that successful enforcement of similar

non-compete provisions may increase the price that current franchisees may be able to obtain

from prospective buyers—these buyers would presumably be willing to pay for the comfort that

the former franchisees could not compete against them for a given period of time.  But this added

value only directly affects a selling franchisee, not Tutor Time.  Successful enforcement of non-

compete restrictions may increase the price that *future* franchisees pay Tutor Time for the right

to manage a center as these prospective operators would know that they could sell their interests

to prospective buyers at a higher price.  But any harm to this benefit that Tutor Time might enjoy

as a result of Defendants' actions is too attenuated and speculative to justify a preliminary

injunction.

10

### d.    Additional Considerations

Other considerations also counsel against a finding of irreparable harm. For instance,
Tutor Time's delay in executing any non-compete restrictions with GabeCo cuts *against* its position.
See New Look Party Ltd. v. Louis Paris Ltd., No. 11-CV-6433 (NRB), 2012 WL 251976, at *10
(S.D.N.Y. Jan. 11, 2012).  At a minimum, Tutor Time knew about GabeCo's operation of the
Staten Island Location without any non-compete restrictions for nearly two years.  (Def. Opp'n
Mem. at 11; see also Young Decl. ¶¶ 20, 21.)  That Tutor Time contends that it unsuccessfully
attempted to execute the agreements is of no moment—it cannot be disputed that GabeCo
operated without any legal restrictions during this period with Tutor Time's knowledge, if not
consent.[6]  Cf. Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (noting
that the plaintiff's claim of irreparable harm was "belied by the fact that [it] ha[d] not included
such [post-termination non-compete] covenants in many of its franchise agreements, including
its agreements with two [of the defendant's] affiliates").

Finally, it is true that the Queens Franchise Agreement specifies that a violation of its
terms could constitute irreparable harm and that Tutor Time may be entitled to an injunction.
(Queens Franchise Agreement § 12.12.)  But the Second Circuit has never held this fact to be
dispositive.  See Life Techs., 2011 WL 1419612, at *5; cf. Baker's Aid, 830 F.2d at 16
("[C]ontractual language declaring money damages inadequate in the event of a breach does not
control the question whether preliminary injunctive relief is appropriate.").  Given the other
circumstances of this case, this boilerplate provision cannot sustain a preliminary injunction.

---

[6]       Defendants contend that Tutor Time has in the past allowed many former Tutor Time franchisees to
maintain child care centers near existing Tutor Time locations, does not require other operators to sign such
agreements, and does not enforce those that are executed. (Def. Opp'n Mem. at 14-16, 23; Supp. Def. Opp'n Mem.
(Dkt. 39).)  Tutor Time contends that it has enforced competitive restrictions against all of these franchisees, except
one. (Oct. 26, 2012, Young Supp. Decl. ¶ 6.)  But regardless of whether Tutor Time's conduct here with respect to
GabeCo is consistent with its past practices, it cuts against a finding irreparable harm.

2.      **Public Interest**

Even in suits between private parties, the moving party must still demonstrate that a preliminary injunction would not harm the public interest.  See SEC v. Citigroup Global Mkts., Inc., 673 F.3d 158, 163 n.1 (2d Cir. 2012) ("[W]hen a court orders injunctive relief, it should ensure that injunction does not cause harm to the public interest."); Singas, 468 F. App'x at 43; see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 21 (2008) ("[E]ven if plaintiffs have shown irreparable injury [from the defendant's conduct], any such injury is outweighed by the public interest . . . ."); cf. Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (requiring plaintiffs in copyright cases to demonstrate that "the 'public interest would not be disserved' by the issuance of a preliminary injunction" (quoting eBay, Inc. v. MercExchange, 547 U.S. 388, 391 (2006))).

Here, even assuming that Tutor Time has established irreparable harm, the relief it seeks would harm the public interest.  A preliminary injunction that closes the Queens and Staten Island Locations would force the customers of the Ivy League centers to secure new childcare services.  This can be costly and problematic for families that may not have much time to devote to selecting a childcare provider.  By contrast, denying Tutor Time's motion would, at worst, allow limited, financial, and compensable harm to continue.  For this additional reason, Tutor Time's motion must be denied.

### III.    CONCLUSION

Tutor Time's motion for a preliminary injunction is DENIED.  The parties are directed to

proceed with discovery and/or settlement discussions under the supervision of Magistrate Judge

Ramon E. Reyes, Jr.

      SO ORDERED.

                                              s/Nicholas G. Garaufis

Dated: Brooklyn, New York                      NICHOLAS G. GARAUFIS
       November ⅃3 , 2012              United States District Judge